**LOUISIANA PETROLEUM RETAIL DEALERS, Inc., et al.**

v.

**The TEXAS COMPANY et al.**

Civ. A. No. 5431.

United States District Court
W. D. Louisiana,
Shreveport Division.

Dec. 7, 1956.

Malcolm E. Lafargue, Shreveport, La., for plaintiffs.

H. C. Walker, Jr., Arthur O'Quin, Claude O'Quin, & Blanchard, Goldstein, Walker & O'Quin, Frederick E. Greer, Shreveport, La., and Otis J. Dillon, New Orleans, La., Alex F. Smith, Jackson, Smith, Mayer and Kennedy, Shreveport, La., Archie D. Gray, Pittsburgh, Pa., John T. Guyton, Hargrove, Guyton, Van Hook & Hargrove, Shreveport, La., A. B. Steed, New York City, Jack D. Childers, Houston, Tex., Charles D. Egan, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

This cause having been heard at a trial, pursuant to the provisions of Fed. Rules Civ.Proc. rule 42(b), 28 U.S.C.A., before the Court without a jury, the Court having considered the pleadings and the evidence, including the depositions of the plaintiffs and the exhibits,

and having considered the briefs of counsel, makes the following

### Findings of Fact.

**1.**

The corporate plaintiff, Louisiana Petroleum Retail Dealers, Inc., and seven individual service station dealers in the City of Shreveport, Louisiana, brought suit under Section 16 of the Clayton Act, 15 U.S.C.A. § 26, to obtain a permanent injunction against the defendants for alleged price-fixing of gasoline and other activities in violation of the Sherman and Clayton Acts. 15 U.S.C.A. § 1 et seq.

**2.**

After taking the depositions of the individual plaintiffs, the defendants filed motions for a summary judgment on the ground that the plaintiffs had come into a court of equity with "unclean hands" and were not entitled to relief. The motion was denied, but pursuant to Rule 42 (b), the case was tried on the merits on the single issue of unclean hands.

**3.**

All of the individual plaintiffs are now, and for years have been, members of the Caddo-Bossier Service Station Association, which consists of service station owners and operators selling at retail gasoline and other petroleum products and services to the motoring public in Caddo and Bossier Parishes.

Plaintiff C. G. Sheffield is a former president of such association, while plaintiffs Lewin N. Semon and Victor N. Alexander were, respectively, at the time of trial, president and secretary-treasurer thereof. Plaintiff John E. Rodgers is a former secretary-treasurer of such association, and, at the time of trial, was a director thereof. Plaintiff H. T. Cummings was chairman of the association's board of directors at the time of trial.

**4.**

The corporate plaintiff, Louisiana Petroleum Retail Dealers, Inc., is organized and incorporated under the laws of the State of Louisiana. Plaintiff John E. Rodgers is president of such association. Plaintiffs Rodgers and C. G. Sheffield were two of the incorporators and first directors of said association.

The Caddo-Bossier Service Station Association is a member of the plaintiff association; and the evidence shows that said plaintiff, Louisiana Petroleum Retail Dealers, Inc., has acted for the Caddo-Bossier Service Station Association and, in fact, is a party to this suit at the request, and on behalf, of the Caddo-Bossier Service Station Association. Also, the complaint and the evidence show that, if anything, plaintiff, Louisiana Petroleum Retail Dealers, Inc., acquired from three service station dealers only the right to receive from defendants herein "compensation for damages".

**5.**

The corporate defendants, The Texas Company, Gulf Refining Company and Esso Standard Oil Company, are organized and incorporated without the State of Louisiana; and are engaged in selling gasoline at wholesale in interstate commerce to some of the individual plaintiffs herein, and to other service station dealers in Caddo and Bossier Parishes who sell such gasoline at retail to the motoring public.

**6.**

The individual defendants, Ted F. Cramer, R. D. Jackson, H. H. Bartels, Joe Bres, Jack A. Harris, Alexander Blanchard, J. M. McMurray, P. D. Rome, Houston H. Holt, J. E. Hanna, Joe Hardaway, John M. Crain, C. G. Snell, Wilson Turner, N. O. Thoms, C. C. Kellar, Chris Stoval and Charles B. Maxwell, are employees, distributors or service station dealers selling the products of the corporate defendants.

**7.**

Among other things, plaintiffs' complaint charges that defendants have engaged in an unlawful conspiracy to fix retail gasoline prices in Caddo and Bossier Parishes, in violation of the antitrust laws of the United States; and plaintiffs admit and contend, both in their complaint and in argument, that

the conspiratorial fixing of retail gasoline prices in the circumstances of this case violates the Sherman Act.

### 8.

All plaintiffs have conspired and agreed to fix retail prices for gasoline and services in Caddo and Bossier Parishes, not only since the gasoline price war began in August, 1955, and continuously since; these practices were carried on—with considerable success—for years beforehand.

### 9.

To accomplish their objectives in this conspiracy, to the detriment of the purchasing public, plaintiffs have committed the following overt acts:

(a) They have fixed specific prices for service station dealer services;

(b) They have established a minimum margin of profit of seven cents per gallon on gasoline;

(c) After the gasoline price war started, they met on several occasions and agreed to "hold the line" on prices, not reducing theirs and not participating in the price war;

(d) They met and adopted, by actual agreement or by effective acquiescence, a so-called "3-point program", presented to the Caddo-Bossier Service Station Association by plaintiff Lewin N. Semon, which called for (1) reduction of retail gasoline prices only to the extent of reductions in "tank wagon", or wholesale, prices, maintaining their seven-cent profit "spread"; (2) removal of all signs advertising prices; and (3) removal of premium Green Stamps from use in the market;

(e) They sought to effectuate this "3-point program" by putting pressure on recalcitrant dealers through calls by delegations and by telephone calls, by having the Building Inspector for the City of Shreveport, who previously had not acted, invoke the City Building Code Regulations prohibiting curb-side price signs, and by employing plaintiff Victor N. Alexander as a full-time secretary to assist in carrying out such "3-point program";

(f) On January 9, 1956, at a meeting attended by all plaintiffs and a large number of other dealers, it was announced that the price war had ended, and the dealers present, including plaintiffs, expressly or tacitly agreed to return to their "pre-war" prices for gasoline, being approximately 33¢ per gallon for regular gasoline and 35¢ per gallon for premium gasoline. The basic plan advanced and adopted at this meeting was to keep all retail prices practically uniform and to let the dealers obtain and hold their customers through personal service and friendship; and, pursuant to this plan, numerous dealers, including at least some of the plaintiffs, raised their prices to the "pre-war" level;

(g) By means of postal cards sent to dealers, and numerous public statements in the press, and in its own paper, authored by plaintiff John E. Rodgers, the Caddo-Bossier Service Station Association (for which plaintiff Louisiana Petroleum Retail Dealers, Inc., acts) in practical effect issued instructions to its membership whereby the fixing and maintenance of retail prices could be effected and the plaintiffs' conspiratorial objectives could be accomplished.

### Conclusions of Law

#### 1.

The Court has jurisdiction of the parties and the subject matter. 15 U.S.C. §§ 22, 26.

#### 2.

■ In a suit for an injunction under Section 16 of the Clayton Act, the Court may grant relief under the same conditions and principles as injunctive relief is granted by courts of equity under the rules governing such proceedings. 15 U.S.C.A. § 26.

#### 3.

■ The equitable doctrine of "unclean hands" is available as a defense to a suit for an injunction under Section 16 of the Clayton Act, 15 U.S.C.A. § 26, especially where, as here, the conduct of the plaintiffs directly relates to the complaints made by them against defendants.

**4.**

Before and since the gasoline price war began in August, 1955, through the several activities outlined in Finding of Fact No. 9, plaintiffs have engaged in a concerted retail price-fixing campaign, and in an unlawful combination and conspiracy to restrain interstate trade and commerce in the sale and distribution of gasoline and services in violation of Section 1 of the Sherman Act. 15 U.S.C.A. § 1.

**5.**

Before and since the gasoline price war began in August, 1955, through the several activities outlined in Finding of Fact No. 9, plaintiffs have engaged in a concerted retail price-fixing campaign and in an unlawful combination and conspiracy to restrain trade and commerce in the State of Louisiana in violation of the Louisiana anti-trust laws. Louisiana Constitution, LSA, Art. 19, § 14; Title 51, LSA–Revised Statutes, Sec. 122.

**6.**

Before and since the gasoline price war began in August, 1955, plaintiffs have engaged in the same conspiratorial price-fixing activities which they attribute to defendants in the complaint and thus are guilty of the same inequitable and unconscionable conduct with which they charge defendants.

**7.**

For each of the independently sufficient reasons set forth in Conclusions of Law Nos. 4, 5 and 6 above, plaintiffs are guilty of "unclean hands" in the very respects about which they complain against defendants in this case. In such circumstances, a court of equity will not grant relief under Section 16 of the Clayton Act as demanded herein. To allow plaintiffs to maintain this suit under Section 16 would be to assist them in their conspiratorial price-fixing activities.

**8.**

Apart from the foregoing, the plaintiff Louisiana Petroleum Retail Dealers, Inc., has no standing to sue because it has no property rights whatever which are being subjected to "threatened loss or damage" within the purport of Section 16 of the Clayton Act. If anything, this plaintiff acquired from three service station dealers only the right "to receive compensation for damages". Such alleged right manifestly refers to defendants' past actions and has no relation to any threatened future loss or damage as required by Section 16. 15 U.S.C.A. § 26.

**9.**

Therefore, plaintiffs are not entitled to an injunction and their suit will be dismissed.